# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

DARVIN WAYNE GRAY,                    )
                                      )
            Petitioner,               )
                                      )
v.                                    ) **Case No. CIV 16-482-JHP-KEW**
                                      )
RICK WHITTEN, Warden,                 )
                                      )
            Respondent.               )

## OPINION AND ORDER

This matter is before the Court on Petitioner's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner is a pro se prisoner in the custody of the Oklahoma Department of Corrections who currently is incarcerated at James Crabtree Correctional Center in Helena, Oklahoma. He is attacking his conviction in Muskogee County District Court Case No. CF-2011-951 for First Degree Rape by Instrumentation (Count 1), Forcible Oral Sodomy (Count 2), and Lewd Molestation of a Child Under the Age of 16 (Count 3), all after former conviction of two or more felonies. He raises the following grounds for relief:

> I.    Error occurred when no election was made with regard to the specific act relied on as the basis for each offense and the trial court failed to properly instruct the jury.
>
> II.   The state district court abused its discretion when it failed to grant the motion for mistrial made after the state improperly commented on Petitioner's failure to testify.
>
> III.  Prosecutorial misconduct deprived Petitioner of a fair trial.
>
> IV.   Ineffective assistance of trial counsel denied Petitioner due process and his right to a fundamentally fair trial.

V.   Petitioner was denied the effective assistance of counsel at trial, for reasons not raised in his direct appeal.

VI.  Petitioner was denied the effective assistance of appellate counsel, in violation of the Sixth Amendment.

VII. The State's evidence was insufficient to prove Petitioner's guilt beyond a reasonable doubt.

Respondent alleges Petitioner has exhausted the state court remedies for his first six habeas claims, however, Ground VII is unexhausted. The following records have been submitted to the Court for consideration in this matter:

A.   Petitioner's direct appeal brief (Dkt. 8-1).

B.   The State's brief in Petitioner's direct appeal (Dkt. 8-2).

C.   Summary Opinion affirming Petitioner's Judgment and Sentence. *Gray v. State*, No. F-2014-322 (Okla. Crim. App. Aug. 7, 2015) (Dkt. 8-3).

D.   Petitioner's post-conviction petition in error (Dkt. 8-4).

E.   Order Affirming Denial of Application for Post-Conviction Relief in *Gray v. State*, No. PC-2016-605 (Okla. Crim. App. Sept. 13, 2016) (Dkt. 8-5).

F.   Transcripts of state court proceedings.

G.   Original Record.

**Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act, federal habeas corpus relief is proper only when the state court adjudication of a claim:

(1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

## Facts

The Oklahoma Court of Criminal Appeals (OCCA) set forth the facts of the case

in Petitioner's direct appeal as follows:

In October of 2011, Appellant managed the "Trail of Blood" at The Castle in Muskogee. The "Trail of Blood" was a Halloween themed maze with different interactive haunted scenes along the path. Appellant was friends with T.G.'s family. Appellant hired the fifteen-year-old T.G. to work even though The Castle required all cast members to be at least sixteen years old. T.G. worked on the weekends. She was assigned to play the role of a shadow in the parachute scene. She dressed in all black and wore costume makeup on her face. T.G. hid behind a parachute hung from the trees and used a leaf blower to cause the parachute to fly out at those that came down the trail.

Appellant sexually abused T.G. while she worked on the "Trail of Blood." He coerced her into staying silent through threats of losing her job, threats of violence, and promises of additional pay.

The first weekend that T.G. worked, Appellant caught her alone in the corral where the staff assembled to get their daily assignments. Appellant hugged T.G., rubbed her back, and touched her chest above her clothes. T.G. was caught off guard. Appellant slipped his hand up T.G.'s shirt and touched her breasts. Appellant stated that T.G. felt better than his wife. T.G. told Appellant that he could not do this because she had a boyfriend. Appellant only stopped when T.G. informed him that she needed to use the restroom.

The second weekend that T.G. worked, Appellant found T.G. alone behind the parachute shortly before the "Trail of Blood" opened.

Appellant made T.G. give him a "hand job" and then a "blow job." He also placed his fingers inside her. T.G. told Appellant to stop but he cursed her and told her that he would fire her if she didn't like it. T.G. continued to come up with reasons why Appellant should stop. In response, Appellant threatened to slice T.G.'s throat if she told anyone what had occurred.

On October 21, 2011, T.G. arrived for her third weekend of work. She went to the parachute scene area as the other workers prepared the trail for the evening. T.G. was alone. Appellant sought her out and found her behind the parachute. He, again, made her give him a "hand job," a "blow job," and stuck his fingers inside her. However, one of the other worker rescued T.G. on this occasion.

Ben Sparks came down the path filling Tiki torches with oil. He spotted two pairs of feet under the umbrella and called out: "Silence means trouble." To which, Appellant chuckled. Sparks entered the parachute area and greeted the pair. T.G. poked her head up above the parachute and, twice, mouthed "Help me" to Sparks. Twenty seconds later, Appellant poked his head up. Sparks was able to persuade Appellant to allow T.G. to help him fill the Tiki torches with oil. T.G. followed Sparks down the path. She visibly fought back her tears and held her breath. Appellant walked off in the other direction. After approximately 50 feet, T.G. openly sobbed. She was unable to speak for approximately ten minutes but, eventually informed Sparks that Appellant had been molesting her on the weekends and buying her silence with her paycheck.

After Sparks' intervention, Appellant frantically searched for T.G. He looked for her on the trail and repeatedly texted her phone. Appellant stated: "We didn't finish but don't tell him." He asked T.G. to call him, apologized and professed his love for her. In still later texts, Appellant stated, "We need to talk baby if u didn't want to do that u should have said no but can I talk to u." He asked her: "What r u telling people." Eventually, Appellant texted: "U all r getting bonus."

The next morning, T.G. told her mother what had happened and her mother called the Muskogee County Sheriff's Department. Deputy Bill Perry and Investigator Coletta Peyton investigated the incident. Perry spoke with Appellant concerning the allegations. He denied ever being alone with T.G. Peyton recovered the text messages and obtained statements from other witnesses. She went to Appellant's home and

interviewed him. Appellant claimed that he thought T.G. was sixteen years old but denied having a sexual relationship with her. Perry asked Appellant why he was behind the parachute with T.G. and Appellant stated that he was helping T.G. get a leaf blower.

*Gray*, No. F-2014-322, slip op. at 2-4. The OCCA's factual findings are entitled to a presumption of correctness, unless Petitioner produces clear and convincing evidence to rebut the presumption. 28 U.S.C. § 2254(e)(1).

**Ground I:   Notice of the Charges and Jury Instructions**

Petitioner alleges in Ground I of the petition, as he did in Proposition One of his direct appeal, that the Information did not provide adequate notice of the charges against him when the State failed to elect which acts of rape, sodomy, and lewd molestation were relied upon for his convictions.

On direct appeal, Petitioner argued that because T.G. testified that each charged act happened three times over the three successive weekends in October 2011, the State should have been required to elect which act it relied upon to prove each count (Dkt. 8-1 at 5-6). The State argued the Information was sufficient to put Petitioner on notice of the acts charged in Counts 1-3, and the dates were specific enough to allow him to present a defense. The OCCA denied relief as follows:

Reviewing the record in the present case, we find that Appellant has not shown the existence of an actual error that is plain or obvious from the record. The State charged Appellant with rape by instrumentation, forcible oral sodomy, and lewd molestation. At trial, the prosecutor presented evidence of more than one act as to each of the charged offenses. The testimony revealed that Appellant had committed two separate acts of rape by instrumentation, two separate acts of forcible sodomy and three separate acts of lewd molestation. These acts occurred over three separate weekends

5

in October of 2011.  As each of the acts clearly constituted separate and distinct crimes, the State could have charged Appellant with a total of seven offenses.  *See Davis v. State*, 993 P.2d 124, 126 (Okla. Crim. App. 1999); *Ziegler v. State*, 610 P.2d 251, 254 (Okla. Crim. App. 1980).  Instead, the State treated the two acts of rape by instrumentation as an ongoing offense, the two acts of forcible sodomy as a second ongoing offense, and the three acts of lewd molestation as a third but separate ongoing offense.

Appellant argues that the State was required to elect which act it relied upon for conviction as to each of the three charged offenses.  Election of offenses is the general rule in this State.  *Huddleston v. State*, 695 P.2d 8, 10-11 (Okla. Crim. App. 1985) (citing *Cody v. State*, 361 P.2d 307, 320 (Okla. Crim. App. 1961)).  However, the State is permitted to treat ongoing offenses as a single act or transaction.

This Court in *McManus v. State*, 297 P. 830 (Okla. Crim. App. 1931), announced that "election is not required when the separate acts are treated as one transaction."  *Huddleston*, 695 P.2d at 10-11.  *Gilson v. State*, 8 P.3d 883, 899 (Okla. Crim. App. 2000).  Although this Court has most recently applied the exception to election in the context of child abuse and sexual abuse, this Court has long recognized the prosecution's discretion in the filing of criminal charges.  *See Cuesta-Rodriguez v. State*, 241 P.3d 214, 235 (Okla. Crim. App. 2010) ("The decision regarding which criminal charges to bring lies within the wide parameters of prosecutorial discretion.").  "Prosecutorial discretion in charging, of course, means more than the power to choose at whim among alternative provisions" but, instead includes "thoughtful consideration of all  the facts and circumstances of the particular case."  *State v. Haworth*, 283 P.3d 311, 317 (Okla. Crim. App. 2012).  The prosecution may charge a single offense but allege several acts that constitute different ways in which the defendant allegedly committed the offense.  *Perez v. State*, 614 P.2d 1112, 1114 (Okla. Crim. App. 1980).  *Hammons v. State*, 366 P.2d 111, 114 (Okla. Crim. App. 1961).  . . .

*Gray*, No. F-2016-605, slip op. at 5-6.

Even so, the prosecution's discretion in charging separate acts as an ongoing offense is not unlimited.  *See Cuesta-Rodriguez*, 241 P.3d at 235.  The defendant must have notice and the record must enable him to plead in bar as to any subsequent prosecution.  *Drake v. State*, 761 P.2d 879, 881-82 (citing *Dugan v. State*, 360 P.2d 833, 834 (Okla. Crim. App. 1961)).

If there is a basis for the jury to believe that one or more of the acts were committed against him, and a reasonable doubt might exist as to the others, then there must be an election. *Scott v. State*, 668 P.2d 339, 343 (Okla. Crim. App. 1983); *Shapard v. State*, 437 P.2d 565, 611 (Okla. Crim. App. 1967); *McManus*, 297 P. at 831.

To determine whether a defendant had sufficient notice of the charges against him, this Court will look at the "four corners" of the Information together with all material that was made available to him at preliminary hearing and through discovery to determine whether the defendant was apprised of what he must defend against at trial or subject to the possibility of being put in jeopardy a second time for the same offense. *Patterson v. State*, 45 P.3d 925, 931 (Okla. Crim. App. 2002); *Parker v. State*, 917 P.2d 980, 986 (Okla. Crim. App. 1996).

Turning to the present case, we find that the State properly elected to treat the two acts of rape by instrumentation as an ongoing offense, the two acts of forcible sodomy as a second ongoing offense, and the three acts of lewd molestation as a third ongoing offense. The State gave Appellant notice of its election. The Information filed in the case alleged:

> COUNT 1: RAPE BY INSTRUMENTATION ~ A FELONY, on or between the 1st day of October, 2011, and the 21st day of October, 2011, by using his finger to penetrate the vagina of T.G., 15 years old, without victim's consent, through the use or threat of force or violence and said defendant not be married to the victim . . .

> COUNT 2: FORCIBLE ORAL SODOMY ~ A FELONY, on or between the 1st day of October, 2011, and the 21st day of October, 2011, by placing his penis in the mouth of T.G., 15 years old, who was not capable to giving legal consent due to her age . . .

> COUNT 3: LEWD MOLESTATION ~ A FELONY, on or between the 1st day of October, 2011, and the 21st day of October 2011, by knowingly and intentionally looking upon, touching, feeling the body or private parts of T.G. in a lewd and lascivious manner by having T.G., 15 years old touch an manipulate his penis, when T.G. was under the age of 16 years old and the Defendant was at least 3 years older than

the victim.

Although the Information did not explicitly list every act which was later introduced into evidence at trial, those acts were made known to Appellant through preliminary hearing and discovery. The evidence at preliminary hearing was that Appellant had molested T.G. the entire time she worked at The Castle. T.G. testified as to what Appellant would do to her. She related the same acts which she later testified to at trial. Ben Sparks testified as to T.G.'s statements to him at preliminary hearing. The State also made available to Appellant through the discovery process: all of the law enforcement reports; the Sexual Abuse Nurse Examiner's report; and T.G.'s statements to Ben Sparks, T.G.'s mother, her coworker, the Sexual Abuse Nurse Examiner, and the law enforcement officers.

In light of this record, we find that Appellant was sufficiently apprised of what he had to defend against at trial. The Information together with all the material made available to Appellant imparted that the offenses were ongoing and that the State had elected to treat the multiple acts as three separate criminal transactions. Appellant was apprised that the State alleged that he had committed acts of rape by instrumentation, forcible oral sodomy, and lewd molestation on the three weekends that T.G. worked for him on the "Trail of Blood" in October of 2011. We note that the record is adequate to enable Appellant to plead in bar as to any subsequent prosecution for the separate acts of rape by instrumentation, forcible oral sodomy, and lewd molestation which the State elected to treat as ongoing offenses.

We further find that there was no basis for the jury to believe that one or more of the acts were committed and a reasonable doubt might exist as to the others. There was not a great disparity in proof between the separate acts. Because the State properly elected to treat the separate acts of lewd molestation, forcible sodomy, and rape by instrumentation that occurred between the 1st day of October, 2011, and the 21st day of October, 2011, we find that no error, plain or otherwise, occurred.

Even if we were to erroneously determine that plain error had occurred, we would find the error harmless in the present case. The alleged error in the present case is not among the limited class of cases to which structural error has been applied. *Robinson v. State*, 255 P.3d 425, 428 (Okla. Crim. App. 2011) (citing *Johnson v. United States*, 520 U.S. 461, 468-69 (1997)). Therefore, the harmless beyond a reasonable doubt

standard applies. *Bartell v. State*, 881 P.2d 92, 97 (Okla. Crim. App. 1994); *Simpson v. State*, 876 P.2d 690, 701 (Okla. Crim. App. 1994) (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)).

Based upon the record in the present case, we find that any error associated with the State's failure to elect which act it relied upon for conviction as to each of the three charged offenses was harmless beyond a reasonable doubt. We note that the testimony at trial concerning the other acts was otherwise admissible. Appellant had notice of the evidence prior to trial. The evidence met several different exceptions to the prohibition against other crimes evidence. *Horn v. State*, 204 P.3d 777, 786-87 (Okla. Crim. App. 2009) (recognizing admissibility of sexual propensity evidence); *Warner v. State*, 144 P.3d 838, 868 (Okla. Crim. App. 2006) (holding evidence central to the chain of events considered part of the *res gestae*); *Huddleston*, 695 P.2d at 11 (finding evidence of other acts admissible under common scheme or plan exception).

We further note that the great weight of the evidence supported the jury's verdicts. Appellant's text messages, when coupled with the testimony of T.G. and Ben Sparks, were tantamount to a confession. Ben Sparks' observations of T.G.'s reaction both during her time alone with Appellant and afterwards wholly corroborated T.G.'s account of the events. The jury's recommendations as to sentence were driven by Appellant's former felony convictions for attempting to obtain money by false pretenses, possession of methamphetamine, and two counts of lewd molestation. In light of the evidence at trial, we that any error in the present case was harmless beyond a reasonable doubt. Proposition One is denied.

*Gray*, No. F-2016-605, slip op. at 7-11.

"The 'sufficiency of an indictment or information is primarily a question of state law.'" *Tapia v. Tansy*, 926 F.2d 1554, 1560 (10th Cir.), *cert. denied*, 502 U.S. 35 (1991) (quoting *Franklin v. White*, 803 F.2d 416, 418 (8th Cir. 1986)). However, the notice provided by the State in a charging instrument must comport with the due process requirements of notice and a meaningful opportunity to defend. *See Jackson v. Virginia*,

443 U.S. 307, 314 (1979). A claim that a charging instrument violated due process by not providing fair notice under the Sixth Amendment's right to a fair trial and the Fourteenth Amendment's guarantee of due process is cognizable in habeas corpus actions. *See Hunter v. New Mexico*, 916 F.2d 595, 598 (10th Cir. 1990), *cert. denied*, 500 U.S. 909 (1991); *Wilkerson v. Wyrick*, 806 F.2d 161, 164 (8th Cir. 1986), *cert. denied*, 481 U.S. 1021 (1987).

Here, the Court finds the OCCA's determination of this claim is supported by the record. Petitioner clearly had sufficient notice of the charges against him in each count, as spelled out in the Information (O.R. 1-2). The Information set forth the elements of each charge and the time period of each charge. Further, each count specified the victim, the act charged, and a relatively narrow three-week time period when each crime occurred. In addition, Petitioner was on notice of the sexual assaults through T.G.'s testimony at the preliminary hearing (P.H. Tr. 38-57).

Petitioner entered his plea of not guilty without objection to the joinder of the separate offenses in the Information (O.R. 7). Therefore, he waived any defect in the Information by the joinder, and the joinder is not jurisdictional under Oklahoma law. The OCCA has held that failure to object to joinder of charges prior to entering a not guilty plea waived any error:

> Next, appellant contends he was denied a fair and impartial trial by the joinder of separate crimes into one information. He claims the joinder was improper and prejudicial.
>
> Our examination of the record reveals appellant entered a plea of not

> guilty during arraignment to all counts. We have held that "[t]he general rule is that a plea to an information waives all defects in the information except those which go to the jurisdiction of the court." We do not believe that misjoinder goes to the jurisdiction of the Court, and the appellant has waived this issue by entering a plea.
>
> *Huddleston*, 695 P.2d at 10 (internal citations omitted).

In Petitioner's case, the victim's trial testimony left no doubt about the occurrence of each act. There was no discrepancy in the proof as to each act so that the jury might believe the one or more of the acts was committed, but not the others. Under Oklahoma law, the State could have charged and proven each sexual assault as a separate crime, but instead chose to charge each type of assault as one count. Petitioner has failed to show how he was prejudiced by the State's not charging him with three counts of lewd molestation, and two counts each of oral sodomy and rape by instrumentation, instead of the one count charged for each type of sexual assault. In fact, Petitioner was given a windfall by being charged this way. The Court further finds the circumstances did not require the jury to be instructed to agree on the specific act supporting the verdict of guilt for each charge. *See Gilson*, 8 P.3d at 899.

Further, Petitioner has failed to identify any Supreme Court opinion that would require the State to make an election of the acts it relied upon to support his convictions or that would require jury instructions as Petitioner requests. *See House v. Hatch*, 527 F.3d 1010, 1016-1017 (10th Cir. 2008) (reasoning that "the threshold determination that there is no clearly established federal law is analytically dispositive in the § 2254(d)(1) analysis"). For the reasons set forth above, Ground I of this habeas corpus petition is

denied.

**Ground II:    Motion for Mistrial**

As he claimed in Proposition Two of his direct appeal, Petitioner claims in Ground II of this petition that the trial court abused its discretion when it denied his motion for a mistrial after the prosecutor commented during closing argument on Petitioner's failure to testify.

Respondent asserts Petitioner failed to object to the argument when it was made, thereby waiving all but plain error.   Acknowledging that the comment was improper, Respondent further maintains it did not rise to the level of plain error and did not deny Petitioner a fundamentally fair trial in light of the strong evidence of his guilt.

On direct appeal, the OCCA found no merit in this claim:

In his second proposition of error, Appellant claims that the trial court erred when it failed to grant his request for a mistrial.   He argues that the prosecutor's comment upon his failure to testify requires that he be granted a new trial.

We review a trial court's ruling on a motion for mistrial for an abuse of discretion.   *Malaske v. State*, 89 P.3d 1116, 1119 (Okla. Crim. App. 2004); *Knighton v. State*, 912 P.2d 878, 894 (Okla. Crim. App. 1996) ("decision to grant a mistrial at defense [request] is left to the sound discretion of the trial court").   An abuse of discretion has been defined as a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented or, stated otherwise, any unreasonable or arbitrary action taken without proper consideration of the facts and law pertaining to the matter at issue.   *Neloms v. State*, 274 P.3d 161, 170 (Okla. Crim. App. 2012).

"A mistrial is an appropriate remedy when an event at trial results in a miscarriage of justice or constitutes an irreparable and substantial violation of an accused's constitutional or statutory right."   *Knighton*, 912

P.2d at 894. A trial court has the duty to declare a mistrial when misconduct or other evidentiary errors have compromised the right to a fair trial and doomed a case to reversal. *Randolph v. State*, 231 P.3d 672, 678 (Okla. Crim. App. 2010). However, "[t]he exercise of this power necessarily involves considerable legal judgment, requiring the application of sometimes complex legal rules and a broad array of factors unique to the trial court setting, including the demeanor of witnesses, the reactions of the jury, the perceived efficacy of admonitions, the cumulative impact of prejudicial errors, and other intangibles." *Id*.

Reviewing the record in the present case, we find that the trial court did not abuse its discretion. The record reveals that the prosecutor commented upon Appellant's failure to testify. In the rebuttal portion of his closing statement, the prosecutor countered defense counsel's argument and asserted that T.G. was credible. However, he stumbled when he proceeded to argue that the account that Appellant gave the officers was not credible. The prosecutor argued:

> Then ask yourself, What reason does the defendant have to lie? I mean, you didn't hear from him and he has the constitutional right not to testify, which you should honor that. If I was charged with a crime, I probably wouldn't testify either because that's my constitutional right. But what you do have, is you've got his written statement. . . . His whole premise is that . . . he was never alone with [T.G]. at all . . . . Yet he tells Deputy Peyton, Well, I did go behind the parachute with her to look for the leaf blower. It just doesn't make sense. . . .

The prosecutor's comment was improper. *Dawkins v. State*, 252 P.3d 214, 220 (Okla. Crim. App. 2011) (finding inadvertent comment on defendant's failure to testify nonetheless constituted error); *Bland v. State*, 4 P.3d 702, 730 (Okla. Crim. App. 2000) (holding prosecution may not comment on defendant's exercise of right to silence).

The trial court's determination that the jury instructions coupled with the prosecutor's subsequent statements cured the error was not a clearly erroneous conclusion. An admonishment to the jury may cure a prosecutor's improper comment upon a defendant's failure to testify. *Bland*, 4 P.3d at 730; *White v. State*, 900 P.2d 982, 992 (Okla. Crim. App. 1995). A prosecutor's subsequent remarks may also diminish the error.

*See Bryan v. State*, 935 P.2d 338, 358 (Okla. Crim. App. 1997).

We note that Appellant failed to take the opportunity to permit the trial court to cure the error with an admonishment and did not object to the comment or move for a mistrial until after the jury had retired to deliberate. *See Malaske*, 89 P.3d at 1119. While making the motion, defense counsel noted that he was sure that the comment was accidental, the prosecutor had tried to cure the error but stated his belief that the mere statement, standing alone, was grounds for a mistrial. The jury instructions explicitly informed the jurors that they were not to permit the fact that Appellant had not testified to weigh against him in the slightest degree. *See* Inst. No. 9-44, OUJI-CR(2d) (Supp. 2010). Appellant has neither argued not shown that the trial court's determination that the prosecutor's subsequent comments cured the error was clearly erroneous. As such, we find that Appellant has not shown that the trial court abused its discretion when it denied his request for a mistrial.

Even if we were inclined to find that the prosecutor did not cure the unfortunate comment, we would find that the comment was harmless beyond a reasonable doubt. This Court has long recognized that a prosecutor's improper comment upon a defendant's failure to testify is subject to harmless error review. *Bland*, 4 P.3d at 730; *Bryan*, 935 P.2d at 358; *White*, 900 P.2d at 992. The great weight of the evidence strongly supported the jury's determination of guilt and its recommendations as to sentence. Appellant's statements to the investigating officers were contradictory and the prosecutor properly commented on this fact. *Williams v. State*, 188 P.3d 208, 228 (Okla. Crim. App. 2008) (holding no error in prosecutor's argument reasonably based on evidence); *McElmurry v. State*, 60 P.3d 4, 19 (Okla. Crim. App. 2002) (finding prosecutor may introduce defendant's contradictory pre-trial statements against him to establish he is untrustworthy in his other statements). Ben Sparks' testimony corroborated T.G.'s account. Appellant's text messages to T.G. after Sparks came to her aid provided compelling evidence of Appellant's guilt. Accordingly, we find that the trial court did not abuse its discretion when it denied the motion for mistrial. Proposition Two is denied.

*Gray*, No. F-2016-605, slip op. at 11-15.

The issue of a trial court's denying a mistrial is a matter of state law not generally cognizable on habeas corpus review. *See Crawford v. Horton*, 2012 WL 1435654, at *7

(N.D. Okla. Apr. 23, 2012) (unpublished).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1995) (per curium)).  "Although federal habeas relief is unavailable for state law errors . . ., an error of state law might rise to the level of a constitutional violation required for habeas relief if it resulted in a fundamentally unfair trial."  *Boyd v. Ward*, 179 F.3d 904, 921-22 (10th Cir. 1999) (citations omitted).

Under Oklahoma law, "the decision to grant a mistrial at defense request is left to the sound discretion of the trial court."  *Knighton v. State*, 912 P.2d 878, 894 (Okla. Crim. App. 1996) (citations omitted), *cert. denied*, 519 U.S. 841 (1996).  Such claims of state procedural or trial error do not present cognizable federal questions in a habeas corpus action, *Brinlee v. Crisp*, 608 F.2d 839, 843 (10th Cir. 1979), *cert. denied*, 444 U.S. 1047 (1980), unless the petitioner demonstrates the error "was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process," *Hooks. v. Workman*, 689 F.3d 1148, 1180 (10th Cir. 2012) (quoting *Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir. 2002)).  *See, e.g., Gonzales v. Tafoya*, 515 F.3d 1097, 1126-27 (10th Cir. 2008) ("In conducting our inquiry, we defer to the state court's interpretations of state law.").  *See also Brown v. Patton*, No. 11-CV-368-GKF-PJC, 2014 WL 4825252, at *10, (N.D. Okla. Sept. 26, 2014) (unpublished) (denying habeas

relief after determining "the trial judge's refusal to declare a mistrial was based on state law and did not result in constitutional error").

After careful review, this Court finds Petitioner has not shown that the OCCA's decision was so fundamentally unfair that he was denied due process. This ground for habeas relief fails.

**Ground III: Prosecutorial Misconduct**

Petitioner alleges in Ground III of the petition, as he did in Proposition Three on direct appeal, that the prosecutor invoked sympathy for the victim by making allegedly improper opening statements and closing argument about the effect of Petitioner's sexual assaults on the victim, by questioning Petitioner's veracity in his statement to the police denying being alone with the victim or engaging in any improper conduct with the victim, and by commenting on Petitioner's failure to testify.

The record shows the prosecutor began his opening statement with an argument that was repeated in his closing remarks at the end of trial:

> Ladies and gentlemen, he prayed [sic] on her, on this 15-year-old girl because he thought he could control her with his paycheck and keep her quiet. Unfortunately, for him he was wrong because she finally got enough courage to tell somebody what was going on.
>
> Now, [T.G.]'s life, there's nothing you can do to fix what happened to
>
> [T.G.], but what you can do is hold this defendant accountable fore [sic]
>
> what he's done to her.   And, ladies and gentlemen, after you've heard all
>
> the evidence in this case, you will be convinced beyond a reasonable doubt

that he's guilty of all three of these charges, and after you've heard all the

evidence, I'll stand before you again and I will ask you to find him guilty.

Thank you.

(J. Tr. II, 34-35).   *See also* (J. Tr. III 211).   Petitioner also challenges the prosecutor's

comments in closing argument:

> I asked her, I said, Well why didn't you tell your mom after the first time it happened?
>
> She told you, I'm scared.   I didn't know what to do.
>
> We talked about this during jury selection.   I think several of you came up with those same answers.   This is a 15-year-old girl.   She's never been in this kind of situation before.   She doesn't know what to do but, you know what, she finally did.   She finally figured it out, I need to tell somebody because this should not be happening.

(J. T. III, 200).

> There's more evidence than just her word.   You've got all this other evidence.   And then the fact she had to go through the rape exam . . . . She has to strip down nude.   She has to let a complete stranger examine her, her vaginal area.   I would think most woman [sic] would not want to do that.   Most men would not want to do that.   Men have to have rape exams, too, in certain cases.   That's a very invasive procedure to go along with this conspiracy that she's come up with.   And you saw her when she came in here and testified. Did she look like she was having fun to come in here and testify in front of 12 strangers, a judge, attorneys too?   I man, I've talked to her a few times but she doesn't really know me, to have to have a defense attorney come up and cross examine her.   Did that really look like it's fun for--she's 17 now to get up here and talk about some of the things that she had to talk about.   Look at all the things that she's had to go through, how she's suffered through this and ask yourself, Why would she lie about that?   Why would she put herself through all of this?   Why would she do that?   Use your common sense.   It just doesn't make sense she would do that.

(J. Tr. III 209-10). Petitioner further alleges that the prosecutor inappropriately commented on a defendant's right not to testify, as discussed in Ground II, by stating: "Then ask yourself, What reason does the defendant have to lie? I mean, you didn't hear from him . . . ." (J. Tr. III 210). The prosecutor continued, however, by adding, "[H]e has the constitutional right not to testify, which you should honor that. If I was charged with a crime, I probably wouldn't testify either because that's my constitutional right. . . ." *Id.*

After briefly discussing the contents of Petitioner's oral and written statements to police, the prosecutor continued:

> . . . What reason does he have to lie? Well, if he lies to you and convinces you that none of this happened, then he goes free. He's not in any trouble. So if he told you the truth and he told you that, yeah, I molested her, I did it. Well, what happens then? You find him guilty and he goes to prison. That's what happens if he tells the truth. But if he tells a lie, then he has a chance of convincing you that he didn't do it, then he goes free. So ask yourself, Who are you going to believe?

(J. Tr. III. 210-211).

On direct appeal, the OCCA found that with the exception of the comment about Petitioner's failure to testify, which the OCCA found did not render Petitioner's trial fundamentally unfair, the prosecutor's conduct was not improper:

> In his third proposition of error, Appellant contends that

18

prosecutorial misconduct deprived him of a fair and reliable trial. Appellant failed to raise a timely objection to any of the instances he now challenges as improper. Therefore, we find that he has waived appellate review of the present claim for all but plain error. *Malone v. State*, 293 P.3d 198, 211 (Okla. Crim. App. 2013).

This Court reviews claims of prosecutorial misconduct for plain error under the standard set forth in *Simpson*. *Malone*, 293 P.3d at 211. The first step of plain error review of a claim of prosecutorial misconduct is to determine whether the prosecutor's comments constitute an actual error. *Id*. at 212. The second step is to determine whether the error is plain on the record. *Id*. The third step is to determine whether the appellant has shown that the prosecutor's misconduct affected his substantial rights. *Id*.

Appellant sets forth three separate passages in the transcript wherein he asserts that the prosecutor attempted to align himself with the jury and sought sympathy for the victim. Reviewing the record, we find that the prosecutor's comments were not improper. The prosecutor's statements were not the type of comments which this Court has identified as flagrant attempts by the prosecutor to align himself with the jury. *Davis v. State*, 980 P.2d 1111, 1120 (Okla. Crim. App. 1999); *see Scott v. State*, 649 P.2d 560, 564 (Okla. Crim. App. 1982). The prosecutor did not overtly seek sympathy for the victim but merely discussed the evidence in the case. *Jackson v. State*, 163 P.3d 596, 604 (Okla. Crim. App. 2007); *Warner*, 144 P.3d at 890. As such, we find that Appellant has not shown the existence of an actual error.

Appellant further asserts that the prosecutor's remarks during closing argument attacked him, commented on his failure to testify and expressed contempt for his person. The passage within the transcript to which Appellant directs the Court does not contain anything resembling the prejudicial remarks that this Court has previously disapproved. *See Dunkel v. State*, 139 P.3d 228, 242 (Okla. Crim. App. 2006); *Mitchell v. State*, 120 P.3d 1196, 1216 (Okla Crim. App. 2005); *Hanson v. State*, 72 P.3d 40, 49-50 (Okla. Crim. App. 2003). Because Appellant's two statements to law enforcement appeared contradictory, the prosecutor's statements concerning Appellant's credibility were fair comments on the evidence. *McElmurry*, 60 P.3d at 19 (holding State may introduce pretrial statement showing that defendant lied about his involvement in the crime); *Fritz v. State*, 811 P.2d 1353, 1359 (Okla. Crim. App. 1991) (finding prosecutor's references to defendant as "liar" were reasonable comments

where evidence showed he had lied on job applications); *Crawford v. State*, 688 P.2d 357, 360 (holding prosecutor may comment on weight of evidence in closing argument).

Nonetheless, we find that Appellant has shown the existence of an actual error that is plain on the record. In Proposition Two, we determined that the prosecutor improperly commented upon Appellant's failure to testify. Because the prosecutor's unfortunate comment was harmless, we find that Appellant has not shown that prosecutorial misconduct affected his substantial rights.

Reviewing the entire record, we find that prosecutorial misconduct did not render Appellant's trial fundamentally unfair. *Malone*, 293 P.3d at 212. Proposition Three is denied.

*Gray*, No. F-2016-605, slip op at 15-17.

In a habeas corpus action, claims of prosecutorial misconduct are reviewed only for a violation of due process. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). "[N]ot every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a failure to observe that fundamental fairness essential to the very concept of justice." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974) (citations and quotations omitted). In order to be entitled to relief, [petitioner] must establish that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 643. This determination may be made only after considering all of the surrounding circumstances, including the strength of the State's case. *See Darden*, 477 U.S. at 181-82.

*Malicoat v. Mullin*, 426 F.3d 1241, 1255 (10th Cir. 2005), *cert. denied*, 547 U.S. 1181 (2006). Further, to obtain relief on a prosecutorial misconduct claim, a habeas petitioner must show the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

After careful review, this Court finds the OCCA's determination of this claim was not contrary to, or an unreasonable application of, Supreme Court law, and the OCCA's decision was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. § 2254(d). This Court further finds the OCCA's determination is supported by the record. As discussed above, the prosecutor should not have referenced Petitioner's failure to testify, but he attempted to correct the comment by telling the jury they should honor Petitioner's right not to testify (Tr. III 210). Further, any error in the reference to Petitioner's not testifying was harmless in light of the very strong evidence of his guilt. For the reasons set forth above, Petitioner was not denied a fundamentally fair trial and thus is not entitled to habeas relief based on his claims in Ground III of the petition.

**Ground IV:    Ineffective Assistance of Trial Counsel**

Petitioner alleges in Ground IV of his habeas petition, as he did in Proposition Four on direct appeal, that he received ineffective assistance of trial counsel when counsel failed to move to force the State to make an election of which acts it was relying upon for conviction on each count, and when counsel failed to ask for corresponding jury instructions on election, as set forth in Ground I. Petitioner also asserts he was denied the effective assistance of trial counsel when counsel failed to object to the alleged prosecutorial misconduct as outlined in Ground III.[1] The OCCA denied relief on this

_____

[1] On direct appeal, Petitioner also raised a claim in Proposition Four that trial counsel was ineffective in failing to object to the prosecutor's comment on Petitioner's failure to testify

claim in Petitioner's direct appeal:

> In his fourth proposition of error, Appellant contends that he was prejudiced by ineffective assistance of counsel. This Court reviews ineffective assistance of counsel claims under the two-part test mandated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Mitchell v. State*, 20 P.3d 160, 190 (Okla. Crim. App. 2011). The *Strickland* test requires an appellant to show: (1) that counsel's performance was constitutionally deficient; and (2) that counsel's deficient performance prejudiced the defense. *Bland*, 4 P.3d at 730-31 (citing *Strickland*, 466 U.S. at 687).

> When a claim of ineffectiveness of counsel can be disposed of on the ground of lack of prejudice, that course should be followed. *Phillips v. State*, 989 P.2d 1017, 1043 (Okla. Crim. App. 1999) (citing *Strickland*, 466 U.S. at 697). To demonstrate prejudice an appellant must show that there is a reasonable probability that the outcome of the trial would have been different but for counsel's unprofessional errors. *Bland*, 4 P.3d at 730-31. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 131 (2011).

> Appellant, first, asserts that defense counsel was ineffective for failing to require the State to make the election set forth as error in Proposition One. We determined in Proposition One that Appellant had not shown that plain error occurred. As such, we find that Appellant has not shown a reasonable probability that the outcome of the trial would have been different but for counsel's unprofessional errors. *Andrew v. State*, 164 P.3d 176, 198; *Glossip v. State*, 157 P.3d 143, 161.

> Second, Appellant asserts that defense counsel was ineffective for failing to timely challenge the prosecutor's comment upon his failure to testify. In Proposition Two, we determined that the prosecutor's subsequent comments coupled with the jury instructions cured the error. Therefore, Appellant has not shown a reasonable probability that the outcome of the trial would have been different but for counsel's failure to request the instruction. *Glossip*, 157 P.3d at 161.

---

at trial as outlined in Proposition Two of the direct appeal (Dkt. 8-1 at 31). Although Respondent asserts that claim is not raised in Petitioner's habeas corpus brief (Dkt. 8 at 30 n.11), the Court finds Petitioner asserted in the brief that "[d]efense counsel also failed to object to the multiple instances of prosecutorial misconduct which occurred" (Dkt. 2 at 14).

Third, Appellant asserts that defense counsel was ineffective for failing to object to the instances of prosecutorial misconduct he raised in Proposition Three. We determined in Proposition Three that prosecutorial misconduct did not render Appellant's trial fundamentally unfair. Thus, we find that Appellant has not shown defense counsel to have been ineffective. *Id.*, 157 P.3d at 161. Proposition Four is denied.

*Gray*, No. F-2016-605, slip op. at 17-18.

"There is a strong presumption that counsel provided effective assistance of counsel and petitioner has the burden of proof to overcome that presumption." *United States v. Rantz*, 862 F.2d 808, 810 (10th Cir. 1988) (citing *United States v. Cronic*, 466 U.S. 648, 658 (1984)), *cert. denied*, 489 U.S. 1089 (1989).

To prove that his counsel's performance was deficient, [petitioner] must show that his counsel "committed serious errors in light of prevailing professional norms such that his legal representation fell below an objective standard of reasonableness." *Duvall v. Reynolds*, 139 F.3d 768, 776-77 (10th Cir.) (internal quotations omitted), *cert. denied*, 525 U.S. 933 (1998). [Petitioner] "must overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance that might be considered sound trial strategy." *Moore v. Reynolds*, 153 F.3d 1086, 1096 (10th Cir. 1998) (citing *Strickland*, 466 U.S. at 689), *cert. denied*, 526 U.S. 1025 (1999). To establish that counsel's deficient performance was prejudicial, [petitioner] must also show that, but for his counsel's errors, there is a reasonable probability that the outcome of the proceeding would have been different. *See Duvall*, 139 F.3d at 777.

*Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999).

Under AEDPA a "state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). When evaluating the state court's resolution of *Strickland*'s performance requirement, federal courts must "use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (quoting

*Cullen v. Pinholster*, 563 U.S. 170, 189-90 (2011)).

*Parker v. Evans*, 569 F. App'x 611, 616 (10th Cir. 2014) (unpublished). "The question 'is not whether a federal court believes the state court's determination' under *Strickland* 'was incorrect but whether [it] was unreasonable--a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Shiro v. Landrigan*, 550 U.S. 465, 473 (2007)). "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

### *Failure to move to make the State elect or to request jury instructions on election*

As discussed above in the analysis of Ground I of the petition, there was no requirement under Oklahoma law and the facts of this case for the State to make an election of which acts were relied upon on for conviction on each count, and there was no error in the jury instructions. Petitioner has failed to show how trial counsel's moving for the State to make an election or requesting such jury instructions would have changed the outcome of his trial. Therefore, the Court finds Petitioner has failed to show how he was prejudiced by trial counsel's performance by demonstrating a "substantial, not just conceivable, likelihood of a different result," but for the alleged ineffectiveness of trial counsel. *Pinholster*, 563 U.S. at 189 (internal quotation marks and citation omitted). Therefore, Petitioner has failed to show the OCCA's decision denying relief on this claim

on direct appeal was contrary to, or an unreasonable application of, *Strickland* or an unreasonable determination of the facts.

### *Failure to object to alleged prosecutorial misconduct*

As shown in the preceding discussion of Ground III of the petition, there was no prosecutorial misconduct, other than the prosecutor's comment concerning Petitioner's failure to testify, which did not deny Petitioner a fair trial. There also was no prosecutorial misconduct in the prosecutor's opening statement in which he merely outlined the evidence the State intended to introduce. The Court finds Petitioner has not shown a substantial likelihood of a different result if trial counsel had objected to the opening statement. Further, because the prosecutor's closing comment about Petitioner's failure to testify did not prejudice Petitioner, the OCCA's denial of relief on this claim was not contrary to, or an unreasonable application of *Strickland*. Nor was it an unreasonable determination of the facts.

After careful review, the Court finds Petitioner has failed to meet the deficient performance and prejudice prongs of the *Strickland* test regarding his claims of ineffective assistance of trial counsel, and the OCCA's determination of this claim was in accordance with Supreme Court law. The Court further finds the OCCA's decision was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. § 2254(d). The ground for habeas corpus relief fails.

**Ground V:   Additional Claims of Ineffective Assistance of Trial Counsel**

Petitioner raises numerous other claims of ineffective assistance of trial counsel. He alleges trial counsel failed to call alleged witnesses to testify about the physical layout of the crime scene, failed to call witnesses who allegedly were in the area at the time of the crimes, failed to file a motion that allegedly would have shown that the victim previously had made false accusations of sexual misconduct against other men, failed to provide evidence of the victim's alleged motive to accuse Petitioner, failed to impeach the victim with alleged contradictions between her testimony at the preliminary hearing at trial, and failed to present a text message allegedly sent by the victim claiming she had falsely accused Petitioner (Dkt. 2 at 16-17).

Petitioner first presented these new claims of ineffective assistance of counsel in his application for post-conviction relief.   The trial court denied relief, finding the claim was or could have been raised on direct appeal.   (Dkt. 8-4 at 12).   The OCCA affirmed the denial of post-conviction relief, consideration of the new ineffective assistance of trial counsel was "also barred by *res judicata* because it was raised in his direct appeal." *Gray v. State*, No. PC-2016-605, slip op. at 2 (Okla. Crim. App. Sept 13, 2016) (citations omitted) (Dkt. 8-5).

> "Post-conviction review is not an opportunity for a second chance to argue claims of error in hopes that doing so in a different proceeding may change the outcome." *Turrentine v. State*, 965 P.2d 985, 989 (Okla. Crim. App. 1998).   "Simply envisioning a new method of presenting an argument previously raised does not avoid the procedural bar." *McCarty v. State*, 989 P.2d 990, 995 (Okla. Crim. App. 1999).

*Gray*, No. PC-2016-605, slip op. at 2-3.

Federal habeas petitioners may not obtain review of claims raised in a habeas petition "that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991)). The Tenth Circuit has upheld Okla. Stat. tit. 22, § 1086, of the Post-Conviction Procedure Act as an independent and adequate state ground for denying habeas relief. *Smith v. Workman*, 550 F.3d 1258, 1267 (10th Cir. 2008). Here, Petitioner has not presented any evidence of cause and prejudice to overcome the bar. Failure to allege cause for the procedural default or prejudice, or to show that a fundamental miscarriage of justice will result if the claim is not reviewed, precludes federal habeas review. *Hawkins v. Mullin*, 291 F.3d 658, 671 n.5 (10th Cir. 2002); *Paxton v. Ward*, 199 F.3d 1197, 1206 (10th Cir. 1999).

The fundamental miscarriage of justice exception is narrow and applies only in the "extraordinary" case of one who is "innocent of the crime." *Gilbert v. Scott*, 941 F.3d 1065, 1068 n.2 (10th Cir. 1991). The Tenth Circuit has explained this "very narrow exception" as follows:

> . . . To come within this "very narrow exception," the petitioner must supplement his habeas claim with a colorable showing of factual innocence. Such a showing does not in itself entitle the petitioner to relief but instead serves as a "gateway" that then entitles the petitioner to consideration of the merits of his claims. In this context, factual innocence means that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."

*Demarest v. Price*, 130 F.3d 922, 941-42 (10th Cir. 1997) (citations omitted). Evidence that "is corroborating evidence, impeaching evidence, or evidence merely raising some suspicion or doubt of [a petitioner's] guilt" is not "persuasive evidence of 'actual innocence.'" *Stafford v. Saffle*, 34 F.3d 1557, 1561 (10th Cir. 1994), *cert. denied*, 514 U.S. 1099 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

After careful review, the Court finds Petitioner has not demonstrated that a miscarriage of justice would result if he is prevented from proceeding on the merits of his claim by the procedural bar. In addition, he has failed to make a colorable claim of actual innocence. Therefore, Ground V is procedurally barred from federal habeas review.

**Ground VI: Ineffective Assistance of Appellate Counsel**

In Ground VI, Petitioner alleges his appellate counsel was ineffective. Petitioner claims he sent two letters to his appellate counsel to advise her of important issues to raise on direct appeal, including the claims in Ground V of this habeas petition. He also complains appellate counsel should have filed a motion for an evidentiary hearing, but failed to do so. Petitioner first raised this claim in his application for post-conviction relief, which was denied by the trial court (Dkt. 8-4). On appeal, the OCCA denied relief as follows:

Claims of ineffective assistance of appellate counsel may be raised for the first time on post-conviction as it is usually a petitioner's first opportunity to allege and argue the issue. As set forth in *Logan v. State*, 293 P.3d 969, 973 (Okla. Crim. App. 2013), post-conviction claims of ineffective assistance of appellate counsel are reviewed under the standard for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Smith v. Robbins*, 528 U.S. 259, 289 (2000) ("[Petitioner] must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance of appellate counsel."). . . . And we recognize that "[a] court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689).

We find no merit in the claim that Petitioner was denied effective assistance of appellate counsel as alleged in his post-conviction application. The Post-Conviction Procedure Act is not a substitute for a direct appeal, nor is it intended as a means of providing a petitioner with a second direct appeal. *Fowler v. State*, 896 P.2d 566, 569; *Maines v. State*, 597 P.2d 774, 775-76 (Okla. Crim. App. 1979).

In his District Court application for post-conviction relief, Petitioner alleges in his second proposition he was denied effective assistance of appellate counsel. Petitioner argues his appellate counsel was ineffective for failing to investigate and request an evidentiary hearing. There is nothing in the case to indicate Petitioner was entitled to or would have been granted an evidentiary hearing or that a hearing would have changed the result of his appeal. As [District] Judge Norman correctly noted in his order, a review of the record makes it clear these claims are without merit. Contrary to Petitioner's claims, appellate counsel thoroughly litigated these claims in Petitioner's direct appeal. Petitioner has not established appellate counsel was deficient.

Appellate review of an ineffective assistance of counsel claim begins with a presumption of competence. *Perry v. State*, 853 P.2d at 203 (Okla. Crim. App. 1993). The burden is on Petitioner to show a reasonable probability that appellate counsel would have prevailed on direct appeal had she argued trial counsel was deficient and these errors resulted in prejudice. *Strickland*, 466 U.S. at 687. Petitioner has failed to provide evidence supporting his claims. Repeated conclusions that appellate

counsel was ineffective are not sufficient proof. This Court has held that "merely conclusory, unprovable, or unspecific claims of ineffective assistance of appellate counsel do not raise an issue of material fact." *Logan*, 293 P.3d at 978-79.

After examining Petitioner's claims of ineffective assistance of counsel, pursuant to the *Logan* and *Strickland* standards stated above, Petitioner has failed to establish appellate counsel's performance was deficient or objectively unreasonable and Petitioner has failed to establish any resulting prejudice. As a result, Petitioner's ineffective assistance of appellate counsel claims are without merit.

*Gray*, No. PC-2016-605, slip op. at 3-6 (Dkt. 8-5).

As discussed above, the *Strickland* test also applies to appellate counsel. *Evitts v. Lucey*, 469 U.S. 387, 395-400 (1985). The Sixth Amendment, however, does not require an attorney to raise every nonfrivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Consequently, appellate counsel engage in a process of "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1985) (quoting *Jones*, 463 U.S. at 751-52). The weeding out of weak claims to be raised on appeal "is the hallmark of effective advocacy," *Tapia v. Tansy*, 926 F.2d 1554, 1564 (10th Cir. 1991), *cert. denied*, 502 U.S. 835 (1991), because "every weak issue in an appellate brief or argument detracts from the attention a judge can devote to the stronger issues, and reduces appellate counsel's credibility before the court," *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). "[M]erely because appellate counsel declines to raise every argument advanced by the client does not equate to ineffective assistance." *Crow v. Champion*, 28 F. App'x 772, 774 (10th Cir. Oct. 17, 2001) (citing *Smith*, 477 U.S. at 536).

"[A] claim of ineffective counsel is a mixed question of fact and law which a federal habeas court reviews de novo." *Williamson v. Ward*, 110 F.3d 1508, 1513 (10th Cir. 1997) (citation omitted). "When a [petitioner] alleges his appellate counsel rendered ineffective assistance by failing to raise an issue on appeal, we examine the merits of the omitted issue. If the omitted issue is without merit, counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel." *United States v. Cook*, 45 F.3d 388, 392-93 (10th Cir.1995) (quotations and citation omitted).

*Parker v. Champion*, 148 F.3d 1219, 1221 (10th Cir. 1998), *cert. denied*, 525 U.S. 1151 (1999).

Petitioner alleges appellate counsel was ineffective for failing to request an evidentiary hearing. He also claims appellate counsel was ineffective in not raising a claim of ineffective assistance of trial counsel for failing to call alleged witnesses to testify about the physical layout of the crime scene, failing to call witnesses who allegedly were in the area at the time of the crimes, failing to file a motion to show the victim allegedly had made previous false accusations against other men of sexual misconduct, failing to provide evidence of the victim's alleged motive to falsely accuse Petitioner, failing to impeach the victim with alleged contradictions between her preliminary hearing testimony and trial testimony, and, by failing to present a text message allegedly sent by the victim claiming she falsely accused Petitioner.

The Court finds Petitioner has failed to provide any evidence in support of these post-conviction claims. Instead, he presents only bare, conclusory assertions. He thus has failed to rebut the findings of the OCCA by clear and convincing evidence. *See Williams v. Zavaras*, 2010 WL 653320, at *1 (10th Cir. Feb 24, 2010) (unpublished)

(bare contentions unsupported by evidence from Petitioner fail to meet Petitioner's burden to make a substantial showing of the denial of a constitutional right).

Petitioner also fails to show how an evidentiary hearing would have changed the outcome of his trial. He has failed to allege how witnesses about the layout of the crime scene would have impeached T.G.'s or Ben Sparks' testimony, or how the result of his trial would have been different. In addition, he has failed to show any alleged inconsistencies between T.G.'s testimony at the preliminary hearing and at trial. Petitioner also has presented nothing to support his claim that T.G. previously had falsely accused other men of sexual assault or that T.G. sent a text message saying she had falsely accused Petitioner.

Furthermore, even if such evidence existed, it only could be used to impeach T.G.'s credibility. The Supreme Court has observed that impeachment evidence that goes to the credibility of a witness generally will not change the result of a trial: "This sort of latter-day evidence brought forward to impeach a prosecution witness will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the heart of [the witness's] account of petitioner's actions." *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992).

To the extent Petitioner is claiming appellate counsel was ineffective in not raising a claim on appeal that trial counsel was ineffective in not objecting to the prosecutor's comment on Petitioner's failure to testify at trial, the Court finds there is no merit to the claim. As discussed above, trial counsel was not ineffective with respect to this claim,

therefore, appellate counsel was not ineffective in failing to raise it on appeal.

Based on the reasoning set forth above, this Court finds the decision by OCCA on the issue of ineffective assistance of appellate counsel did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court law, and the decision did not result in a decision that was based on an unreasonable determination of the facts in as presented in the State court proceeding. *See* 28 U.S.C. § 2254(d). Therefore, habeas corpus relief cannot be granted on Ground VI.

**Ground VII: Sufficiency of the Evidence**

Finally, Petitioner alleges the evidence at trial was insufficient to convict him. Respondent asserts this claim is unexhausted because Petitioner did not raise it in his direct appeal or in his appeal to the OCCA of the denial of his application for post-conviction relief. Instead, he first raised it in his application for post-conviction relief, which was denied by the trial court as barred by *res judicata*, because it could have been, was not raised on direct appeal (Dkt. 8-4 at 12).

In Petitioner's post-conviction appeal, the OCCA did not directly address the claim of sufficiency of the evidence, but noted that it was raised as the third post-conviction proposition and denied by the trial court in Petitioner's application for post-conviction relief. *Gray v. State*, No. PC-2016-605, slip op. at 2 (Okla. Crim. App. Sept. 13, 2016) (Dkt. 8-5). The OCCA found that "consideration of Petitioner's claim[] for relief is waived because [it] could have been raised in his direct appeal." *Id.* (citing *Logan*, 293 P.3d at 973; *Fowler*, 896 P.2d at 569; *Walker v. State*, 826 P.2d 1002, 1004

(Okla. Crim. App. 1992).

Post-conviction review provides petitioners with very limited grounds upon which to base a collateral attack on their judgments. Okla. Stat. tit. 22, § 1086 (2001). Issues that were previously raised and ruled upon by this Court are procedurally barred from further review under the doctrine of *res judicata*; and issues that were not raised previously on direct appeal, but which could have been raised, are waived for further review. *See* Okla. Stat. tit. 22, § 1086 (2001); *King v. State*, 29 P.3d 1089, 1090 (Okla. Crim. App. 2001); *Webb v. State*, 835 P.2d 115, 116, (Okla. Crim. App. 1992), *overruled on other grounds*, *Neill v. State*, 943 P.2d 145, 148 n.2 (Okla. Crim. App. 1997). Post-conviction review was neither designed nor intended to provide applicants another direct appeal. *Cf. Coddington v. State*, 259 P.3d 833, 835 (Okla. Crim. App. 2011) ("The post-conviction process is not a second appeal.").

*Logan*, 293 P.3d at 973. The Court therefore finds Petitioner's claim is procedurally barred from federal habeas review.

As discussed above, the Tenth Circuit has upheld Okla. Stat. tit. 22, § 1086, of the Post-Conviction Procedure Act as an independent and adequate state ground for denying habeas relief. *Smith v. Workman*, 550 F.3d 1258, 1267 (10th Cir. 2008). Again, Petitioner has presented no evidence of cause and prejudice to overcome the bar, or shown that a fundamental miscarriage of justice will result if the claim is not reviewed.

Therefore, the Court finds this claim also is procedurally barred from habeas review.

**Certificate of Appealability**

The Court further finds Petitioner has failed to make a "substantial showing of the denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2). He also has not shown "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether [this] court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, a certificate of appealability cannot be issued.

**ACCORDINGLY**, Petitioner's petition for a writ of habeas corpus (Dkt. 1) is DENIED, and Petitioner is DENIED a certificate of appealability.

**IT IS SO ORDERED** this 21st day of February 2020.

James H. Payne
United States District Judge
Eastern District of Oklahoma